# United States Court of Appeals
*for the*
# Fifth Circuit

---

### DOCKET NO. 14-30196

---

GOPINATH GOPALAM,

*Plaintiff-Appellant*,

*V.*

RICK BENNETT; OFFICER DAVID BREAUX;
CHIEF SHERMAN JACKSON; CITY OF GONZALES, LOUISIANA,
*Defendants-Appellees*.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA,

---

### BRIEF FOR PLAINTIFF-APPELLANT

---

J. CHRISTOPHER ALEXANDER, SR., ESQ.
LAW OFFICE OF J. CHRISTOPHER ALEXANDER, SR., LLC
Louisiana Bar Roll No.: 26,591
3751 Government Street, Suite A
Baton Rouge, Louisiana 70806
225-761-9456 (telephone)
225-761-7899 (facsimile)
chris@jcalaw.us
*Counsel for the Plaintiff / Appellant*

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**A.     Plaintiff-Appellant:**

    **1.**    Gopinath Gopalam

**B.     Counsel for Plaintiff-Appellant:**

    **1.**    J. Christopher Alexander, Sr., Esq. – Law Offices of J. Christopher Alexander, Sr., LLC

**C.     Defendants-Appellees:**

    **1.**    Rick Bennett, 3138 South Street, Gonzales, Louisiana 70737

    **2.**    David Breaux – Officer in the City of Gonzales Police Department

    **3.**    Sherman Jackson – Chief of the City of Gonzales Police Department

    **4.**    City Of Gonzales, Louisiana – A local government municipal corporation in the State of Louisiana

**D.     Counsel for Defendants-Appellees:**

    **1.**    Bradley Charles Myers, Esq. – Kean Miller, LLP

    **2.**    Katie Deranger Bell, Esq. – Kean Miller, LLP

    **3.**    Amanda Marie Collura, Esq. – Kean Miller, LLP

**4.**     Cody Michael Martin, Esq. – Tureau & Martin Law Firm, APLC

**5.**     Robert Ryland Percy, III, Esq. – Percy, Lanoux & Mumphrey, LLC

**6.**     Erin Wiley Lanoux, Esq. – Percy, Lanoux & Mumphrey, LLC

**7.**     Pegram J. Mire, Jr., Esq. – Dugas & Mire, LLC

**8.**     Sidney Albert Marchand, III, Esq. – Attorney at Law

**9.**     Thomas McCabe Lockwood, III, Esq. – Attorney at Law

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Gopinath Gopalam respectfully requests oral argument in accordance with F.R.A.P. 34 and 5th Cir. R. 28.2.3.   Appellant shows such argument will assist the Court in its analysis of the disputed constitutional, statutory, and regulatory issues presented within this appeal.   Appellant further shows such argument will enable counsel for the litigants to address and resolve any case-specific questions the Court may have, and oral presentation will also assist the Court in understanding the materiality of facts of which there was a genuine dispute sufficient to preclude summary judgment.

In accordance with F.R.A.P. 34(a)(2)(A-C), Appellants show the present appeal is not frivolous, the dispositive issue or issues have not been authoritatively decided, and the Court's decisional process would be significantly aided by oral argument.  See, *e.g.*, U.S. v. Salinas-Garza, 811 F.2d 272 (5th Cir. 1987).

# TABLE OF CONTENTS

| TITLE | PAGE |
|---|---|
| Certificate of Interested Persons | i |
| Statement Regarding Oral Argument | iii |
| Table of Contents | iv |
| Table of Authorities | vi |
| Jurisdictional Statement | 1 |
| Issues Presented | 2 |
| Statement of the Case | 3 |
| Summary of the Argument | 7 |
| Standard of Review | 8 |
| Argument | 9 |
| Issue No. 1: Did the District Court commit reversible error when it granted summary judgment finding Officer Breaux is entitled to the protection afforded to public officials by qualified immunity? | 9 |
| Issue No. 2: Did the District Court commit reversible error when it granted summary judgment dismissing Plaintiff's civil conspiracy claims against Defendants Bennett, St. James, Smith, Kongara, and Bullock? | 23 |
| Issue No. 3: Did the District Court commit reversible error when it granted summary judgment dismissing Plaintiff's Section 1983 claim against Chief Jackson on a theory of supervisory liability for failure to train or supervise? | 25 |
| Issue No. 4: Did the District Court commit reversible error when it granted summary judgment dismissing Plaintiff's Section 1983 municipal liability claims against the City of Gonzales? | 26 |

Conclusion                                                                            27

Signature of Counsel                                                        27

Certificate of Service                                                     28

Certificate of Compliance with F.R.A.P. 32(a)(7) and 5th Cir. R. 32.3          31

## TABLE OF AUTHORITIES

### CASES

Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC, 620 F.3d 558 (5th Cir. 2010) ........................................ 8

Anadarko Petroleum Corp. v. Williams Alaska Petroleum, Inc., 737 F.3d 966 (5th Cir. 2013) .............................. 7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .................................. 10

Bayou Fleet, Inc. v. Alexander, 68 F.Supp.2d 734 (E.D.La. 1999) ................................................................ 24

Bazan v. Hidalgo Cty., 246 F.3d 481 (5th Cir. 2001) .......... 18

Cedyco Corp. v. PetroQuest Energy, LLC, 497 F.3d 485 (5th Cir. 2007) ....................................................... 8

Cozzo v. Parish of Tangipahoa, 98-cv-2728 (E.D.La. 01/03/00), --- F.Supp.2d ---, 2000 WL 6280, *Aff'd in Part, Rev'd in Part by* Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273 (5th Cir. 2002) ........ 9.10,11,12, 13,14,15,17,18, 19,21,22

Crowe v. Lucas, 595 F.2d 985 (5th Cir. 1979) ................. 24

Ecology Center of Louisiana, Inc. v. Coleman, 515 F.2d 860 (5th Cir. 1975) ....................................................... 10

Ferrell v. Dallas Independent School Dist., 392 F.2d 697 (5th Cir. 1968) ....................................................... 15

Fontenot v. Cormier, 56 F.3d 669 (5th Cir. 1995) ............. 14

Gabriel v. City of Plano, 202 F.3d 741 (5th Cir. 2000) ....... 26

Gilbane Bldg. Co. v. Admiral Ins. Co., 664 F.3d 589 (5th Cir. 2011) ................................................................ 8

Glenn v. City of Tyler, 242 F.3d 307 (5th Cir. 2001) .......... 14

Hale v. Townley, 19 F.3d 1068 (5th Cir. 1994) ................ 24

Harris v. Payne, 254 Fed.Appx. 410 (5th Cir. 2007) .......... 17

Keating v. Jones Development of Missouri, Inc., 398 F.2d 1011 (5th Cir. 1968) ................................................. 14

Kipps v. Caillier, 197 F.3d 765 (5th Cir. 1999), *citing* ....... 17

Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167 (5th Cir. 1990) ................................................. 23

Mahone v. Addicks Util. Dist., 836 F.2d 921 (5th Cir. 1988) .. 16

McAllister v. Resolution Trust Corp., 201 F.3d 570 (5th Cir. 2000) ................................................................ 10

McPhee v. Oliver Tyrone Corp., 489 F.2d 718 (5th Cir. 1974) ................................................................ 13,14

Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ... 2

Morris v. Dearborne, 181 F.3d 657 (5th Cir.1999) ... 17

One Beacon Ins. Co. v. Crowley Marine Servs., Inc., 648 F.3d 258 (5th Cir. 2011) ... 8,9

Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ... 14

Pierce v. Smith, 117 F.3d 866 (5th Cir.1997) ... 18

Pizzolato v. Perez, 524 F.Supp. 914 (E.D.La. 1981) ... 24,25

Rader v. Cowart, 543 Fed.Appx. 358, 360 (5th Cir. 2013). ... 7

Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) ... 16

Rhyce v. Martin, 00–2623 (E.D.La. 01/09/2003), --- F.Supp.2d ---, 2003 WL 79290 ... 14

San Jacinto Savings & Loan v. Kacal, 928 F.2d 697 (5th Cir. 1991) ... 15,16,17

Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ... 16,17,19,20,21, 24

Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533 (5th Cir. 2004) ... 8

Shaw v. Hospital Authority, 507 F.2d 625 (5th Cir. 1975) ... 15

Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) ... 18

Southard v. Texas Board of Criminal Justice, 114 F.3d 539 (5th Cir. 1997) ... 18

Stidham v. Texas Com'n on Private Sec., 418 F.3d 486 (5th Cir. 2005) ... 15,16,17

Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131 (1915) ... 15

U.S. v. Salinas-Garza, 811 F.2d 272 (5th Cir. 1987) ... iii

Walter v. Horseshoe Entertainment, 483 Fed.Appx. 884 (5th Cir. 2012) ... 2

## STATUTES

18 U.S.C. 2511(2)(d)

28 U.S.C. 1291 ... 2

28 U.S.C. 1331 ... 1

28 U.S.C. 1343 ... 1

28 U.S.C. 1367 ... 1

28 U.S.C. 636(b)(1)(A)

42 U.S.C. 1983 ... 1,3,6,27

## RULES OF COURT

5th Cir. R. 28.2.1     i
5th Cir. R. 28.2.3     iii
5th Cir. R. 32.3     31
F.R.A.P. 25(c)(1)(D)     30
F.R.A.P. 32(a)(7)(B)(iii)     31
F.R.A.P. 34     Iii
F.R.A.P. 34(a)(2)     Iii
F.R.C.P. 32 (a)(7)     31
F.R.C.P. 56     8,9
F.R.C.P. 56(a)     7
F.R.C.P. 56(c)     10,11,18

## JURISDICTIONAL STATEMENT

This is an appeal from a final judgment of the United States District Court for the Middle District of Louisiana.  The District Court had federal question jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343, and 1367, and based upon the pendent jurisdiction of that Court to entertain claims arising under state law.

Defendants filed several Motions for Summary Judgment [ROA.423, ROA.621, and ROA.758] which were granted, together with two (2) Motions for Partial Summary Judgment [ROA.525, ROA.721] which were dismissed as moot [ROA.1146].  Ultimately, the District Court entered judgment (1) dismissing Plaintiff's claims against Officer David Breaux as precluded by "the protection afforded to public officials by qualified immunity" [ROA.1140], (2) dismissing Plaintiff's Section 1983 civil conspiracy claims against Richard "Rick" Bennett, St. James Behavioral Health Hospital, Inc., Wendell B. Smith, Dr. Rama Kongara, M.D., and Dr. Lance Bullock, M.D. [ROA.1142], (3) dismissing Plaintiff's Section 1983 claim against Chief Jackson on a theory of supervisory liability for failure to train or supervise [ROA.1143], (4) dismissing Plaintiff's Section 1983 municipal liability claims against the City of Gonzales [ROA.1144], (5) dismissing Plaintiff's Section 1983 claims for damages sustained by his business entities as moot [ROA.1145], and (6) dismissing Plaintiff's state law claims without prejudice

[ROA.1145]. Final judgment was entered dismissing the case with prejudice on February 6, 2014 [ROA.1147]. Plaintiff filed this timely Notice of Appeal on March 5, 2014 [ROA.1148].

In accordance with 28 U.S.C. 1291, this Honorable Court is vested with "jurisdiction of appeals from all final decisions of the district courts of the United States." The District Court's judgment [ROA.1148] was a "final decision" for purposes of invoking this Honorable Court's jurisdiction. See, *e.g.*, Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Although Plaintiff's corresponding state law claims were dismissed *without* prejudice, the District Court's judgment was nevertheless a final, appealable order that disposed of all claims against all parties to the case. In general, this Honorable Court has "jurisdiction to hear the appeal" where the "district court entered a final appealable order, and there was a timely notice of appeal." Walter v. Horseshoe Entertainment, 483 Fed.Appx. 884, 885, fn. 2 (5th Cir. 2012).

## ISSUES PRESENTED

**Plaintiff's Issue No. 1:** Did the District Court commit reversible error when it granted summary judgment finding Officer Breaux is entitled to the protection afforded to public officials by qualified immunity?

**Plaintiff's Issue No. 2:** Did the District Court commit reversible error when it granted summary judgment dismissing Plaintiff's civil conspiracy claims

against Defendants Bennett, St. James, Smith, Kongara, and Bullock?

**Plaintiff's Issue No. 3:**    Did the District Court commit reversible error when it granted summary judgment dismissing Plaintiff's Section 1983 claim against Chief Jackson on a theory of supervisory liability for failure to train or supervise?

**Plaintiff's Issue No. 4:**    Did the District Court commit reversible error when it granted summary judgment dismissing Plaintiff's Section 1983 municipal liability claims against the City of Gonzales?

### STATEMENT OF THE CASE

Plaintiff Gopinath Gopalam ("Gopalam") is an established businessman who owns and operates a number of companies which provide support services to the medical industry.  Mr. Gopalam is also a founding and principal shareholder in St. James Behavioral Health Hospital, Inc. ("St. James"), a named party defendant herein and a corporation whose four (4) shareholders include Mr. Gopalam along with Defendants / Appellees Wendell B. Smith ("Smith"), Dr. Rama Kongara, M.D. ("Kongara"), and Dr. Lance Bullock, M.D. ("Bullock").  Additionally, Defendant / Appellee Rick Bennett ("Bennett") serves as the entity's Administrator.

On or about September 1, 2011, Bennett, Bullock, Kongara, and Smith proceeded forward with a plan designed to remove Mr. Gopalam as a corporate

officer in St. James and terminate all of the contractual relations between St. James and Mr. Gopalam's various separately-owned entities.   As part of their plan, Bennett, Bullock, Kongara, and Smith sought to physically remove and evict Mr. Gopalam from the premises of a building he occupied adjacent to St. James's offices.   The subject premises were leased in the name of Aquila Properties, LLC, a company in which Bullock and Kongara were shareholders.   In turn, Aquila subleased a portion of the premises unto Mr. Gopalam's separately-owned enterprise, Apollo Management Consultants, LLC.

Despite Mr. Gopalam's vested right of occupancy, Appellees Bennett, Bullock, Kongara, and Smith engaged the aide of Gonzales Police Officer David Breaux ("Breaux") and carried out Mr. Gopalam's forcible and physical eviction from the premises and a grand-scale forcible and illegal entry into Gopalam's private offices.   After securing Mr. Gopalam's departure from his office by means of subterfuge, Appellee Smith brought professional locksmiths to break the doorway locks on Plaintiff's premises and give Smith and others free entry.   The "team" then continued inward where they broke and/or circumvented other locks and security devices, all as were maintained by Mr. Gopalam for the security of his confidential client files, his essential business documentation, and his essential business and professional electronic data.

In addition to professional locksmiths, Appellee Smith secured professional

4

contractors to engage in a broad-scale theft of valuable computer data, financial records, protected health information, and other electronic data and associated devices (*e.g.*, computer hardware) from Mr. Gopalam's private office. In addition to accessing and purloining this critical data, Appellee Smith instructed the assembled professionals to destroy certain critical data which belonged to Mr. Gopalam and in which none of the party Defendants / Appellees had any right, title, or interest.

Meanwhile, Mr. Gopalam had been called away to a fictitious "meeting" in an adjacent building. There, Appellees Bennett, Bullock, and Kongara met with Mr. Gopalam, advised him (erroneously) that he was being removed as an officer / director for St. James. They next had Appellee Officer Breaux effect an armed escort of Mr. Gopalam from the premises. During Mr. Gopalam's exit, he advised Officer Breaux that he wished to return to his own next-door office. Mr. Gopalam specifically advised Officer Breaux that he (Gopalam) possessed a legitimate right and interest in and to the premises through his sole ownership of the premises sublessee, Apollo Management Consultants, LLC.

Because the Apollo / Gopalam office was already under a coordinated siege by Appellee Smith, Officer Breaux refused the request and, instead, commanded Mr. Gopalam, under threat of detention and custodial arrest, to physically remove himself from the premises. Mr. Gopalam attempted to call 911 (to report the

burglary-in-progress), but Officer Breaux terminated the calls and advised the 911 operator to ignore any/all further requests for assistance at that location. At day's end, Mr. Gopalam was physically prevented from accessing his own business for a period of forty eight (48) hours.

On September 4, 2012, Mr. Gopalam filed his Complaint [ROA.13] with the United States Court in and for the Middle District of Louisiana. In brief, Mr. Gopalam asserted claims for a 42 U.S.C. 1983 civil conspiracy claim against Appellee Officer Breaux together with Appellees Bennett, Bullock, Kongara, and Smith, a 42 U.S.C. 1983 claim against Gonzales Chief of Police Sherman Jackson ("Jackson") on a theory of supervisory liability for failure to train or supervise, a 42 U.S.C. 1983 claim against the City of Gonzales on several theories of municipal liability, and various state law claims against the City of Gonzales and others.

Following pretrial discovery and some preliminary motion practice, the various Defendants / Appellees filed a series of ultimately-dispositive motions for summary judgment [ROA.423, ROA.621, and ROA.758] and motions for partial summary judgment [ROA.525, ROA.721], all on September 16, 2013. Mr. Gopalam filed timely opposition memoranda [ROA.768, ROA.1059, ROA.1069, ROA.1082, and ROA.1089], and the Defendants / Appellees interposed timely reply memoranda [ROA.1105, ROA.1115, ROA.1124, ROA.1126, and ROA.1129]. Despite Mr. Gopalam's clear articulation of principles and facts

6

strongly militating against a pretrial, summary dismissal of this matter, the Court ultimately granted the summary judgment motions, dismissed the motions for partial summary judgment as moot, and dismissed the state-law claims *without* prejudice [ROA.1146].

Following the entry of a final judgment dismissing the case with prejudice on February 6, 2014 [ROA.1147], Mr. Gopalam filed a timely Notice of Appeal on March 5, 2014 [ROA.1148].

### SUMMARY OF THE ARGUMENT

It is well-settled that summary judgment is *only* appropriate "when the evidence indicates there is no genuine issue of material fact…" Anadarko Petroleum Corp. v. Williams Alaska Petroleum, Inc., 737 F.3d 966, 969-70 (5th Cir. 2013) *and* F.R.C.P. 56(a), *both as cited in* Rader v. Cowart, 543 Fed.Appx. 358, 360 (5th Cir. 2013). Most fundamentally, the District Court's ruling overlooks a wide divergence in the parties' respective recollection of the facts—a divergence which, without more, provides precisely the "genuine issue" necessary to defeat the Defendants' Motion for Summary Judgment.

Next, and with this misapplied standard in-hand, the District Court proceeds to declare there to be "no genuine issue as to whether Officer Breaux acted reasonably under the circumstances" [ROA.1139], no "genuine issue of material fact as to [the absence of] an agreement between Bennett and the Private

Defendants to commit an illegal act" [ROA.1142], no record evidence to "satisfy the deliberate indifference prong of the failure to supervise or train analysis" [ROA.1143], and the "conclusory and unsupported assumptions [regarding municipal liability which] are not sufficient to survive a motion for summary judgment" [ROA.1144]. Ultimately, the District Court grants a wide-ranging summary judgment dismissal of *all* Plaintiff's federal claims. This outcome is both materially unjust as well as unsupported by a proper application of F.R.C.P. 56 and its interpretative jurisprudence.

### STANDARD OF REVIEW

This Honorable Court reviews "a district court's grant of summary judgment *de novo*," and applies "the same legal standards that the district court applied," viewing "the evidence in the light most favorable to the nonmoving party." Gilbane Bldg. Co. v. Admiral Ins. Co., 664 F.3d 589, 593 (5th Cir. 2011), *citing* Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC, 620 F.3d 558, 561-62 (5th Cir. 2010). This Court affirms "only if there is no genuine issue of material fact and one party is entitled to prevail as a matter of law." Cedyco Corp. v. PetroQuest Energy, LLC, 497 F.3d 485, 488 (5th Cir. 2007), *citing* Shaw Constructors v. ICF Kaiser Engineers, Inc., 395 F.3d 533, 539 (5th Cir. 2004), *and* F.R.C.P. 56. In this respect, the district court's findings of fact are reviewed for clear error. One Beacon Ins. Co. v. Crowley Marine Servs., Inc., 648 F.3d 258,

262 (5th Cir. 2011).

**ARGUMENT**

**Issue No. 1:** Did the District Court commit reversible error when it granted summary judgment finding Officer Breaux is entitled to the protection afforded to public officials by qualified immunity?

The claims asserted by Appellant Gopalam are closely analogous to those successfully pursued through an Eastern District of Louisiana jury trial and Fifth Circuit appeal in Cozzo v. Parish of Tangipahoa, 98-cv-2728 (E.D.La. 01/03/2000), --- F.Supp.2d ---, 2000 WL 6280, *Affirmed in Part, Reversed in Part by* Cozzo v. Tangipahoa Parish Council--President Government, 279 F.3d 273 (5th Cir. 2002). Many of the same defenses raised by Defendants in the present matter were considered and soundly rejected in Cozzo—particularly including the defense of qualified immunity. Despite the District Court's finding that Cozzo is "inapposite to the present matter" [ROA.1139], in truth there are strong parallels between the successful claims pursued in Cozzo and those in the present case.

As a preliminary observation, the District Court "distinguishes" Mr. Gopalam's circumstance from that of the plaintiff in Cozzo by stating:

> Officer Breaux was not presented with any contrary evidence, let alone clear evidence, of Gopalam's purported ownership at the time of the event in question. Thus, unlike the facts presented in Cozzo, there was nothing but Gopalam's protestations, which were expected under the circumstances, to pique Officer Breaux's curiosity [ROA.1139].

Of course, this interpretation overlooks the fact that it was Gopalam's own

vehement protests—heard in the context of the other attendant circumstances—which provided Officer Breaux with *precisely* the clear, contrary evidence necessary to make his unquestioning eviction of Mr. Gopalam a *per se* unreasonable act.

The "sufficiency" of Mr. Gopalam's protests is purely a question of degree. Or stated another way, if it would *ever* have been possible for Mr. Gopalam's protests to cause Officer Breaux's actions to become unreasonable, a reasonable jury could potentially return a verdict for Mr. Gopalam (as the non-movant), thereby making summary judgment as to this issue *per se* inappropriate: "Disputed facts preclude summary judgment if the evidence would allow a reasonable jury to return a verdict for the non-movant."  McAllister v. Resolution Trust Corp., 201 F.3d 570, 574 (5th Cir. 2000), *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  As this Honorable Court has long held: "If there is a real factual dispute between the parties, relevant to a legal claim, then they *must* be afforded a trial."  Ecology Center of Louisiana, Inc. v. Coleman, 515 F.2d 860, 864 (5th Cir. 1975), emphasis added, *citing* F.R.C.P. 56(c), McPhee v. Oliver Tyrone Corp., 489 F.2d 718 (5th Cir. 1974), *and* Keating v. Jones Development of Missouri, Inc., 398 F.2d 1011 (5th Cir. 1968).

In light of the close correlation of Cozzo to the matter at hand, a brief review of that matter's facts is in order.  Cozzo involved an underlying divorce proceeding

in which the former marital home was the wife's separate property.  The husband had previously moved out of the house and filed for divorce.  In conjunction with his divorce filing, the husband sought and was granted a TRO ordering his estranged wife to "stay away from his residence and his place of business."  <u>Cozzo v. Parish of Tangipahoa</u>, 98-cv-2728 (E.D.La. 01/03/2000), --- F.Supp.2d ---, 2000 WL 6280, p. *2.  The Tangipahoa Parish Sheriff's Office ("TPSO") undertook service of the TRO upon the wife, with TPSO Captain Peoples traveling to the wife's home to deliver same.

Upon arriving at the wife's separately-owned home, Captain Peoples learned the wife was at work, and he encountered her estranged husband who had previously moved out and sought the injunction which was presently being served. Despite ample proof in the record to the contrary, the husband told Captain Peoples "that he worked on the premises and that he resided there."  <u>Cozzo</u>, 2000 WL 6280 at p. *2 (E.D.La. 2000).  Based upon the husband's misrepresentations, Captain Peoples "decided that the order in question required Mrs. Cozzo to be evicted from the house"—relief which was *per se* inappropriate in a circumstance where the wife owned the property, the husband had previously moved out, and the TRO enjoined the wife from approaching / entering the *husband's* residence—not the former marital abode which she owned.  <u>Id</u>.

Rather than pausing to clear up the confusion caused by the estranged

husband's misrepresentations, Captain Peoples relied exclusively on the husband's rendition in determining the TRO being served authorized the wife's eviction:

> At no point did any person from the Tangipahoa Parish Sheriff's Department call, attempt to call, or attempt in any other way to contact the judge who signed the order to determine whether the judge intended Mrs. Cozzo to be evicted from her home, intended that Mr. Cozzo be allowed to reside in the home during the pendency of the proceedings, or seek legal advice as to whether indeed the order gave the Sheriff's Department the authority to evict her.

Id. Instead, Captain Peoples dispatched his subordinate, Deputy Joiner, to evict Mrs. Cozzo from the premises when she returned home from work around 10:00 PM that night. Upon being approached by Deputy Joiner and advised of her immediate eviction, Mrs. Cozzo "protested and told him that the property was her separate property." Id. Deputy Joiner called Captain Peoples and related Mrs. Cozzo's stated concern; however, Captain Peoples related "that he did not care what she said, she would have to be put out." Id. Mrs. Cozzo ultimately complied, and when she realized the following morning that she had left her driver's license, money, and credit cards at the home, she contacted the TPSO for permission to get her things. The TPSO refused, telling Mrs. Cozzo "that she could not return for any reason" and advising her such requests should be made by and through her attorney in the ongoing civil proceedings. Id.

A hearing was thereafter scheduled regarding use and occupancy of the former marital abode, and some six (6) months after her wrongful, late-night

eviction, the trial judge allowed Mrs. Cozzo to return to her home. The trial judge expressed amazement that his original TRO "had been interpreted to require or even allow eviction of Mrs. Cozzo," and the trial judge further opined Mrs. Cozzo should sue the Tangipahoa Parish Sheriff's Office—which she did.

The <u>Cozzo</u> matter ultimately went to trial against TPSO Sheriff J. Edward Layrisson and TPSO Deputy Ronald Joiner. The jury returned a verdict in favor of the plaintiff, Mrs. Cozzo, finding Joiner deprived plaintiff of her constitutional rights, finding Layrisson was deliberately indifferent to the deprivation of plaintiff's constitutional rights, finding Layrisson and Joiner were legal causes of plaintiff's injury, awarding plaintiff compensatory damages for mental and emotional pain and suffering and inconvenience and economic loss, and assessing punitive damages against Layrisson. Following the verdict, Layrisson and Joiner moved for judgment as a matter of law and/or for a new trial, arguing, *inter alia*, "Defendants are entitled to qualified immunity as a matter of law." <u>Cozzo</u>, 2000 WL 6280 at p. *1 (E.D.La. 2000). Ultimately, the District Court rejected the qualified immunity defense, and defendants appealed to this Honorable Court. In a detailed, published opinion with significant application to Mr. Gopalam's matter, this Court agreed Layrisson and Joiner were *not* entitled to qualified immunity. <u>Cozzo v. Tangipahoa Parish Council--President Government</u>, 279 F.3d 273, 285 (5th Cir. 2002).

This Court's consideration and straightforward rejection of the qualified immunity defense for both the implementing officer (Joiner) and the supervising officer (Layrisson) is founded upon well-established principles of law. In Cozzo and elsewhere, this Court has agreed that for a plaintiff to prevail against an assertion of qualified immunity, the Court must determine: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) whether the officials' conduct is objectively reasonable in light of the legal rules applicable at the time of the alleged constitutional violation. Glenn v. City of Tyler, 242 F.3d 307, 312 (5th Cir. 2001), and Fontenot v. Cormier, 56 F.3d 669, 673 (5th Cir. 1995), both as cited in Rhyce v. Martin, 00–2623 (E.D.La. 01/09/2003), ---F.Supp.2d ---, 2003 WL 79290, at p. *3 (unpub.). See also, Cozzo, 279 F.3d at 284 (5th Cir. 2002). This two-step sequence was mandated by the U.S. Supreme Court in Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The court may examine these factors in any order. Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 817, 172 L.Ed.2d 565 (2009).

Regardless of the order, Appellant Gopalam alleged and will offer his own testimony and that of other witnesses prove his clearly-established rights were violated, and, further, Mr. Gopalam will show the conduct of Defendant / Appellee Breaux was objectively unreasonable in the premises. As to the first element (violation of a clearly-established right), Mr. Gopalam notes that in the analogous

case of <u>Cozzo</u>, Deputy Joiner was constrained to simply concede on appeal "that his actions violated Ms. Cozzo clearly established Fourth Amendment rights…" <u>Cozzo</u>, 279 F.3d at 284 (5th Cir. 2002).   This concession in <u>Cozzo</u> was no accident: This Court has routinely concluded that "for the purposes of overcoming qualified immunity," the plaintiff "properly demonstrated the violation of a clearly established right by showing that the defendants deprived him of his liberty interest without due process of law." <u>Stidham v. Texas Com'n on Private Sec.</u>, 418 F.3d 486, 491 (5th Cir. 2005).

To this point, the Supreme Court has long held that "the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure." <u>Truax v. Raich</u>, 239 U.S. 33, 41, 36 S.Ct. 7, 60 L.Ed. 131 (1915).  On the basis of this essential personal freedom, this Court has confirmed a litigant's constitutionally protected liberty interest in pursuing a chosen occupation.  <u>Ferrell v. Dallas Independent School Dist.</u>, 392 F.2d 697, 703 (5th Cir. 1968).  Thus, for instance, a podiatrist's application for staff privileges at a public hospital for purposes of engaging in his occupation as a podiatrist involved a liberty interest protected by the Fourteenth Amendment, and the owner of an arcade had a protectable liberty interest in operating her business. *See* <u>Shaw v. Hospital Authority</u>, 507 F.2d 625, 628 (5th Cir. 1975) *and* <u>San Jacinto Savings &</u>

Loan v. Kacal, 928 F.2d 697, 704 (5th Cir. 1991).

The Kacal case is further notable to the extent it was relied upon by this Court in Stidham to establish "a protected property interest in the lost profits of [plaintiff's destroyed] business." Stidham, 418 F.3d at 492. Thus, the Stidham court concluded that a plaintiff's anticipated profits from various contractual agreements "may be considered as a measure of damages from the deprivation of a liberty interest." Id. In addition to this more remote property interest, the Fourteenth Amendment provides a more general right not to be deprived of property without due process of law. Thus, the U.S. Supreme Court has concluded the deprivation of a property interest violates the owner's substantive due process. Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 223, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985). Cf. Mahone v. Addicks Util. Dist., 836 F.2d 921, 929 (5th Cir. 1988), noting that, at a minimum, "property interest" as defined in the Fourteenth Amendment includes both real and personal property.

All of the foregoing points are germane to Mr. Gopalam's circumstance vis-à-vis the "first" prong of Saucier. Mr. Gopalam clearly alleged the existence of both real and personal property interests relative to his business endeavors and tenancy at St. James' premises. Mr. Gopalam alleged the actions of Defendant Breaux and others caused a deprivation of those interests. Mr. Gopalam also alleged the existence of certain contractual agreements which were materially

16

breached by and through the actions of Defendant Breaux and others and that the said breaches constitute deprivation of a liberty interest in accordance with the principles of <u>Kacal</u> and <u>Stidham</u>.

In short, there can be no question Breaux's conduct, as specifically alleged by Mr. Gopalam, violated a multiplicity of constitutional rights—a point tacitly conceded by Breaux's own motion which argues only "the second prong of the qualified immunity analysis." ROA.439. Further, and in the factually similar circumstance of <u>Cozzo</u>, the defendant officer frankly "conceded he had violated the Fourth Amendment, and the court's analysis concerned the second prong of the qualified immunity test." <u>Harris v. Payne</u>, 254 Fed.Appx. 410, 417 (5th Cir. 2007), *citing* <u>Cozzo</u>, 279 F.3d at 284-285 (5th Cir. 2002). Plaintiff's allegations against Mr. Breaux, as measured against the allegations made in <u>Cozzo</u>, "at least gives rise to a genuine issue of material fact as to whether the defendant actually engaged in the conduct that violated the clearly-established right." <u>Kipps v. Caillier</u>, 197 F.3d 765, 768 (5th Cir. 1999), *citing* <u>Morris v. Dearborne</u>, 181 F.3d 657, 665 (5th Cir.1999). For all the foregoing reasons, the "first" prong of <u>Saucier</u> is decidedly met in these premises.

Turning then to the "second" <u>Saucier</u> prong, in the context of summary judgment, the defense of qualified immunity requires a determination of whether the plaintiff has asserted a violation of a constitutional right under current

constitutional standards.  Southard v. Texas Board of Criminal Justice, 114 F.3d 539, 550 (5th Cir. 1997), *and* Siegert v. Gilley, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).  Thus, under this second step, the District Court is called upon to determine whether "the official's conduct was objectively reasonable under clearly established law existing at the time of the incident." Bazan v. Hidalgo Cty., 246 F.3d 481, 490 (5th Cir. 2001).  Although "the objective reasonableness inquiry is a question of law" on summary judgment, this question of law "cannot be decided if there are genuine issues of material fact ..." Bazan v. Hidalgo Cty., 246 F.3d at 490, *citing* Pierce v. Smith, 117 F.3d 866, 871 (5th Cir.1997), *and* F.R.C.P. 56(c).

Thus, under this "second" prong of Saucier, the analysis set forth in Cozzo continues to be germane.  There, this Honorable Court agreed with the District Court in concluding the actions of the supervisory officer (Capt. Peoples) and the evicting officer (Deputy Joiner) were objectively unreasonable—"it was objectively unreasonable to evict [the plaintiff]." Cozzo, 279 F.3d at 286 (5th Cir. 2002).  This Court particularly notes Deputy Joiner was apprised of Mrs. Cozzo's stated concerns regarding the eviction—concerns which the deputy ignored.  This Court also notes the deputy "was well aware of the cause of Ms. Cozzo's concerns and the need for clarification." Id.  Captain Peoples advised Mrs. Cozzo "he did not care what the papers said and that she would have to leave her home," while

18

Deputy Joiner acquiesced to his supervisor's directive.  Id.  Notably, this Court states: "Captain Peoples's clearly stated abject disregard for and Deputy Joiner's patently unaroused curiosity about 'what the papers say' undercut Deputy Joiner's claim that he acted reasonably by evicting Ms. Cozzo."  Id.  Based upon these facts, and in light of prevailing law, this Honorable Court affirmed the district court's decision to deny the asserted qualified immunity claims.

As applied, Defendant Breaux possessed exactly this type of "patently unaroused curiosity" in his dealings with Mr. Gopalam's eviction / removal:

> Q.     And did you do anything at that point to confirm whether or not what Mr. Koch was telling you was accurate?
>
> A.     Not at that point, no.
>
> Q.     At any point, did you do anything to confirm whether or not what Mr. Koch was telling you was accurate?
>
> A.     No.

ROA.819, ll. 16-23.  Based on his deposition testimony, Defendant Breaux demonstrates precisely the type of "abject disregard" of the overall facts which the Cozzo court relied upon in denying qualified immunity.  Examples of this "abject disregard" or "patently unaroused curiosity" are abundant:

> Q.     I guess my question is this: Did you ever ask Mr. Gopalam any questions about whether or not he had a right to be in his office?
>
> A.     No.

ROA.821, ll. 15-18.

Q.    Okay. Did you ever ask Mr. Gopalam if he had any documentation, a lease, sub-lease that he could present to you to show you that he had a legal right to be there in his office?

A.    Did I ever ask him?

Q.    Yes.

A.    No, Sir.

Q.    Did you ever ask either Mr. Koch or Mr. Smith to provide to you any documentation whereby they had the authority to make Mr. Gopalam leave?

A.    No, I did not ask.

Q.    Do you know if your supervisor ever asked either Mr. Koch or Mr. Smith to produce any documentation that would allow them to make Mr. Gopalam leave the premises?

A.    I have no idea if they did.

ROA.826, ll. 10-25.

Q.    All right. You don't know one way or the other whether or not Mr. Koch or Mr. Smith or anybody had sought authority from a judge to go into Mr. Gopalam's office or have him leave the premises?

A.    Do I know that?

Q.    Yes.

A.    I have no idea, no.

ROA.835, ll. 22-25 – ROA.836, ll. 1-3.

Q.    Did you have any discussions with Mr. Koch about Mr. Gopalam's ownership interest in St. James Behavioral Health Hospital?

A.    Mr. Gopalam's ownership?

20

Q.    Yes.

A.    No.

Q.    So as you sit here today, you don't have any knowledge of what his ownership interest is in St. James Behavioral Health Hospital?

A.    I have no idea, you know, anything about his St. James position other than he was employed there.

ROA.838, ll. 15-25.

Q.    And you did nothing to verify whether or not anything Mr. Gopalam told you was true or not?

A.    No, sir. I spent maybe a couple of minutes with Mr. Gopalam at the most.

ROA.848, ll. 22-25.

In concluding the officer's conduct was objectively unreasonable under the second prong of <u>Saucier</u>, the <u>Cozzo</u> court notes the officer's conduct was particularly reprehensible where, as a matter of regular practice, he ignored "the protestations of the person being evicted from their property," and, in Mrs. Cozzo's circumstance, advised the responding officer "with words to the effect, 'I don't care what she says – put her out.'"   <u>Cozzo</u>, 2000 WL 6280 at p. *10 (E.D.La. 2000).   In the Eastern District's estimation, "[t]his statement is perhaps the embodiment of the phrase *deliberate indifference*." <u>Id</u>.  Unfortunately, Defendant Breaux's deposition testimony reflects his own infection with this same indifference:

Q.    Do you recall whether or not Mr. Gopalam at any point while you
      were there told you, "This office is being sub-leased by my company,
      Apollo Management, LLC"?

A.    The only thing I remember Mr. Gopalam saying is that was his office.
      He needed to get into his office.

ROA.836, ll. 4-10.

Q.    And you didn't ask any further questions?

A.    No.

ROA.836, ll. 13-14.

Q.    You said Mr. Gopalam just continued to tell you, "I want to go into
      my office, I want to go into my office"?

A.    Yes, sir.

ROA.849, ll. 1-4.

Defendant Breaux demonstrated a profound indifference to "getting it right"
or otherwise ensuring his actions—undertaken under the color of law—were legal,
appropriate, justified, or otherwise done in a manner which would preserve and
protect Appellant Gopalam's supremely-protected Constitutional rights.  Instead,
Defendant Breaux unilaterally and unjustly invoked the power of his badge to
illegally and forcibly evict a law-abiding tenant whose right of continued
occupancy was well-established and whose eviction was being sought by his
fellow business partners without authority or justification.  In short, "nothing but
Gopalam's protestations" should have been more than sufficient—as made in light

of the entire circumstance at hand—to *at least* raise a genuine issue of material fact with regard to whether Officer Breaux's conduct were unreasonable. The shield of qualified immunity is not designed to protect officers like Defendant Breaux who engage in such egregious civil rights violations, and the District Court erred in granting summary judgment in Defendant Breaux's favor.

**Issue No. 2:** Did the District Court commit reversible error when it granted summary judgment dismissing Plaintiff's civil conspiracy claims against Defendants Bennett, St. James, Smith, Kongara, and Bullock?

The District Court errantly concludes Appellant Gopalam "fails to demonstrate that there was joint activity" between Officer Breaux and Defendants / Appellees Bennett, Bullock, Kongara, and Smith. ROA.1142. The District Court further errs in concluding Gopalam "does not allege specific facts to show that there is a genuine issue of material fact as to whether there was an agreement … to commit an illegal act." ROA.1142. As to both alleged failures, the District Court engages in an impermissible "testing" of Gopalam's cited facts for overall trial-worthy sufficiency.

In reply, Appellant Gopalam first expressly incorporates by reference those arguments set forth above in his response to Issue No. 1. In short, the court may grant summary judgment *only* if it is "satisfied that no reasonable trier of fact could find for the nonmoving party." Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 178 (5th Cir. 1990). Where proof of an agreement to act in concert

often rests on circumstantial evidence, even Plaintiff's alleged failure to prove the claimed conspiracy by showing an express, overt agreement is *not* axiomatically fatal:

> The evidence here showed that the defendants had participated in private meetings at which (plaintiff) was discussed. From this evidence and the testimony regarding the defendants' course of conduct toward (plaintiff) the jury could reasonably have inferred that a conspiracy existed.

Crowe v. Lucas, 595 F.2d 985, 993 (5th Cir. 1979).  Thus, in order to establish a conspiracy under Section 1983, the plaintiff need only show the defendants had a "unity of purpose, common design, and understanding, *or* meeting of the minds in an unlawful arrangement" to violate the plaintiff's constitutional rights.  Bayou Fleet, Inc. v. Alexander, 68 F.Supp.2d 734, 745 (E.D.La. 1999), emphasis added, *citing* Hale v. Townley, 19 F.3d 1068, 1075 (5th Cir. 1994).

Applying this non-exclusive standard, the Eastern District of Louisiana has found where the defendants reached "a meeting of minds" and "shared in the general objective," this was "the common plan" from which several relatively minor "overt acts" were sufficient to provide "strong circumstantial evidence" permitting the court "to conclude that a conspiracy existed between defendant[s]." Pizzolato v. Perez, 524 F.Supp. 914, 923 (E.D.La. 1981).

In light of this standard, especially when taken together with the fact that a conspiracy may be shown through purely circumstantial evidence, the admitted conduct of Officer Breaux is sufficient to establish such "unity of purpose" and to

implicate Breaux in Mr. Gopalam's civil rights conspiracy claim.  For that reason, together with those stated with more particularity in Mr. Gopalam's original opposition memorandum [ROA.781-782], the District Court's granting of summary judgment as to Appellant Gopalam's civil conspiracy claims should properly be reversed, and this matter should be remanded for further proceedings.

**Issue No. 3:** Did the District Court commit reversible error when it granted summary judgment dismissing Plaintiff's Section 1983 claim against Chief Jackson on a theory of supervisory liability for failure to train or supervise?

The District Court improperly dismisses this claim upon a fundamental misapprehension regarding Appellant Gopalam's proffer of competent summary judgment evidence regarding the applicability of the "single incident exception" for establishing failure to train liability.  ROA.1142-1143.  The District Court seizes upon Gopalam's statement that he "will come forward at trial with evidence" as a failure by Gopalam to "point to evidence in the evidentiary record as it now stands."  ROA.783, ROA.1143.

In fact, Gopalam cites to the entire panoply of evidence he theretofore referenced in addressing Appellee Breaux's foregoing claim for qualified immunity—including the record-specific citations made therein unto, *inter alia*, Officer Breaux's sworn deposition testimony.  Those citations, together with the overall narrative of Gopalam's forced eviction and the theft / destruction of his property while he was detained, provides ample "proof of the possibility of

recurring situations that present an obvious potential for violation of constitutional rights and the need for additional or different ... training," as required by this Court in <u>Gabriel v. City of Plano</u>, 202 F.3d 741, 745 (5th Cir. 2000), for establishing the "single incident exception" for failure to train liability.   Taken as a whole and viewing "the evidence in the light most favorable to the nonmoving party," it is clear that the District Court erred in granting summary judgment dismissing Appellant Gopalam's claim for supervisory liability arising from a failure to train or supervise.

**Issue No. 4:** Did the District Court commit reversible error when it granted summary judgment dismissing Plaintiff's Section 1983 municipal liability claims against the City of Gonzales?

Plaintiff incorporates by reference those arguments set forth above in response to Issue Nos. 1, 2, and 3.   The District Court once again errantly dismisses Appellant Gopalam's municipal liability claims upon a fundamental misapprehension regarding the nature, type, and sort of evidence Gopalam has submitted in support thereof.  Contrary to the District Court's assertions, Gopalam has identified and offered corroborating evidentiary support for the "off-duty detail" policy implemented by the City of Gonzales.   In particular, Gopalam has attached the sworn affidavit of Appellee Officer Breaux regarding the precise inner workings of this off-duty detail system.  See ROA.783-784, ROA.799-855.

Taken as a whole and viewing "the evidence in the light most favorable to

the nonmoving party," it is clear that the District Court erred in granting summary judgment dismissing Appellant Gopalam's Section 1983 municipal liability claims against the City of Gonzales.

## CONCLUSION

For the foregoing reasons, the Court should reverse the Ruling below and remand for further proceedings.

## SIGNATURE OF COUNSEL

Respectfully Submitted,

**Law Office of J. Christopher Alexander, Sr., LLC**


 /s/ John Christopher Alexander, Sr., Esq.                    May 20, 2014
J. Christopher Alexander, Sr., Esq.                           Dated
Louisiana Bar Roll No.: 26,591
3751 Government Street, Suite A-2
Baton Rouge, Louisiana  70806
225-761-9456 (telephone)
225-761-7899 (facsimile)
chris@jcalaw.us
*Counsel for the Plaintiffs / Appellants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I, J. Christopher Alexander, Sr., Esq., am a member

of the bar of the United States Fifth Circuit Court of Appeals; and,

**I FURTHER CERTIFY** that an electronic copy of the above and foregoing

Original Appellant's Brief, all as filed on behalf of the Plaintiff-Appellant,

Gopinath Gopalam, has been served upon all counsel of record herein:

**Bradley Charles Myers, Esq. (T.A.)**
Kean Miller, LLP
Post Office Box 3513
Baton Rouge, Louisiana 70821
225-387-0999 (telephone)
225-388-9133 (facsimile)
brad.myers@keanmiller.com

**Katie Deranger Bell, Esq.**
Kean Miller, LLP
Post Office Box 3513
Baton Rouge, Louisiana 70821
225-387-0999 (telephone)
225-388-9133 (facsimile)
katie.bell@keanmiller.com

**Amanda Marie Collura, Esq.**
Kean Miller, LLP
Post Office Box 3513
Baton Rouge, Louisiana 70821
225-387-0999 (telephone)
225-388-9133 (facsimile)
amanda.collura@keanmiller.com

**Cody Michael Martin, Esq.**
Tureau & Martin Law Firm, APLC
208 East Cornerview Street
Gonzales, Louisiana 70737

225-647-8529 (telephone)
225-647-8530 (facsimile)
cody@tureaumartin.com

**Robert Ryland Percy, III, Esq.**
Percy, Lanoux & Mumphrey, LLC
712 North Burnside Avenue
Gonzales, Louisiana 70737
225-621-8522 (telephone)
225-647-6959 (facsimile)
rpercy@percylaw.com

**Erin Wiley Lanoux, Esq.**
Percy, Lanoux & Mumphrey, LLC
712 North Burnside Avenue
Gonzales, Louisiana 70737
225-621-8522 (telephone)
225-647-6959 (facsimile)
elanoux@percylaw.com

**Thomas McCabe Lockwood, III, Esq.**
12345 Perkins Road, Building 2, Suite 201
Baton Rouge, Louisiana 70810
225-769-6799 (telephone)
225-769-6797 (facsimile)
mac@thomaslockwoodlaw.com

**Pegram J. Mire, Jr., Esq.**
Dugas & Mire, LLC
1212 East Worthy Road, Suite "A"
Gonzales, Louisiana 70737
225-644-1255 (telephone)
225-644-6294 (facsimile)
jmire@eatel.net

**Sidney Albert Marchand, III, Esq.**
320 Chetimaches Street
Donaldsonville, Louisiana 70346
225-473-3811 (telephone)
225-473-1607 (facsimile)

sidney@sam3alc.brcoxmail.com

**I Finally Certify** that in accordance with Record Document 00512620725, the foregoing service was effected via email delivery unto the Court at dantrell_johnson@ca5.uscourts.gov, which delivery was made for review and, if found compliant, formal entry into this matter's docket, with duplicate copies of the said email being likewise delivered unto opposing counsel via email, all of which, when done, will result in this pleading's delivery into the Electronic Case Filing (ECF) system of the Court in conformity with F.R.A.P. 25(c)(1)(D) and which email transmission, together with subsequent docketing / filing, when completed, is sufficient to provide notification unto all counsel, from the City of Baton Rouge, Parish of East Baton Rouge, State of Louisiana, on this the 20th day of May, 2014.

/s/ J. Christopher Alexander, Sr., Esq.
J. Christopher Alexander, Sr., Esq.

**CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(A)(7) AND 5TH CIR. R. 32.3**

**I HEREBY CERTIFY** that the above and foregoing Appellants' Brief complies with the type-volume limitation of F.R.A.P. 32(a)(7)(B) in the following respects:

1.   This brief contains **5,984** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and,

2.   The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits set forth in F.R.C.P. 32 (a)(7), may result in the court's striking the brief and imposing sanctions against the person signing the brief.

/s/ J. Christopher Alexander, Sr., Esq.
J. CHRISTOPHER ALEXANDER, SR., ESQ.